UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHARLES LOENS          :
    *Plaintiff*         :
                          :
v.                     :  C.A. No.
                          :
WALGREENS COMPANY-PAID :
DISABILITY PLAN FOR SALARIED :
TEAM MEMBERS, PHARMACISTS :
AND REGISTERED NURSES, :
WALGREEN EASTERN CO.,  :
INC., and SEDGWICK CLAIMS :
MANAGEMENT SERVICES, INC. :
    *Defendants*       :

## COMPLAINT

Now comes the Plaintiff in the above entitled matter and complains as follows:

### Nature of Action

1. This is an action seeking an award to Plaintiff of long-term disability ("LTD") benefits under the Walgreens Company-Paid Disability Plan for Salaried Team Members, Pharmacists and Registered Nurses (the "Plan").

2. Plaintiff seeks recovery of benefits pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)).

3. At all relevant times, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1), and as a result of his employment, Plaintiff was qualified under the Plan as a "participant" as defined by 29 U.S.C. §1002(7). This claim relates to benefits under the foregoing Plan.

### Parties

4. Plaintiff, Charles Loens, is and was at all relevant times a resident of the State of Rhode Island.

5. Defendant, Walgreen Eastern Co., Inc. ("Walgreens"), is a foreign corporation registered to do business in the State of Rhode Island and, upon information and belief, is part of the Walgreens family of companies, also known as Walgreen Co., which sponsors and funds the Plan from its general assets.

6. Defendant, Sedgwick Claims Management Services, Inc. ("Sedgwick"), is a foreign corporation registered to do business in the State of Rhode Island and is the fiduciary charged with making benefit determinations under the Plan, including the determination made on Plaintiff's claim.

## Jurisdiction and Venue

7. At all relevant times, Defendants had sufficient minimum contacts within the State of Rhode Island to satisfy the requirements for personal jurisdiction pursuant to Rhode Island's Long Arm Statute.

8. Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA), and in particular 29 U.S.C. §1132(e)(1) and §1132(f). In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

9. ERISA provides, at 29 U.S.C. §1133, a mechanism for administrative or internal appeal of benefit denials. The administrative appeal process has been exhausted, is satisfied, and this dispute is ripe for suit.

10. Venue is proper in this Court because Plaintiff is a resident of the State of Rhode Island, and Defendants are subject to this Court's personal jurisdiction with respect to this action. 28 U.S.C. §1391(c)(2).

11. Defendants are corporations which have, at all times relevant hereto, done business within this district.

## Statements of Fact

12. For 11 years, Mr. Loens worked as a Walgreens retail pharmacist.

13. Mr. Loens became totally disabled under the terms of the Plan on or about May 3, 2017 as a result of a medial meniscus tear in his left knee and the resulting surgery. Following surgery, Mr. Loens was diagnosed with osteoarthritis in his left knee.

14. Mr. Loens applied to Sedgwick for both short-term disability ("STD") and long-term disability ("LTD") benefits under the Plan.

15. Mr. Loens is entitled to LTD benefits if he meets the following definition of disability:

> [D]ue to illness, pregnancy, or injury, you are prevented from performing one or more of the essential duties of your own occupation on a full time basis and are receiving appropriate care and treatment from a doctor on a continuing basis; and
> - For the first 18 months of long-term benefits, you are unable to earn more than 80% of your pre-disability earnings or indexed pre-disability earnings at your own occupation from any employer in your local economy; or
> - Following that 18-month period, you are unable to earn more than 60% of your indexed pre-disability earnings from any employer in your local economy at any gainful occupation for which you are reasonably qualified, taking into account your training, education, experience, and pre-disability earnings.

**Sedgwick determined that Mr. Loens was disabled and approved benefits**

16. Sedgwick case manager Scott Sturm determined that Mr. Loens' occupation as a retail pharmacist was a light-level occupation that required continual walking and standing with some bending and reaching.

17. Sedgwick investigated and determined that Mr. Loens was disabled as of May 3, 2017 because he was unable to perform the essential duties of his light-level occupation due to his left knee surgery and continued symptoms.

18. Sedgwick paid STD benefits until August 10, 2017, after which it began paying LTD benefits.

**Mr. Loens made a failed attempt to return to work and Sedgwick denied further benefits**

19. On August 31, 2017, Mr. Loens attempted to return to work as a retail pharmacist. After two shifts, Mr. Loens was forced to stop working again due to increased pain, discomfort, and swelling in his left knee, caused by his return to work and the continual standing and walking his job required.

20. On September 5, 2017, Mr. Loens saw his physical therapist, Susan Soscia, PT. Ms. Soscia's physical exam showed positive swelling in Mr. Loens' knee and she observed: "RTW x2 days + the knee swelled up a lot . . . swelling + discomfort are persistent."

21. Following his failed return to work, Mr. Loens contacted Sedgwick. Mr. Sturm set up a recurrent disability claim for Mr. Loens.

22. Under the Plan, a recurrent disability occurs when an individual returns to work after a disability and then becomes disabled again.

23. Under the Plan, the "new disability will be considered a continuation of your original disability if you return to work on a full-time basis with the company for less than six months before becoming disabled again. In this situation, your long-term benefits will resume immediately."

24. On or about November 8, 2017, Mr. Loens' file was reviewed by Jules David Hip-Flores, M.D., an orthopedic surgeon that Sedgwick hired using its vendor, Network Medical Review Co. Ltd.

25. Dr. Hip-Flores concluded: "the claimant does not have functional impairment from 09/05/17 – present that would affect his ability to perform the regular, unrestricted duties of his occupation."

26. Dr. Hip-Flores arbitrarily rejected medical evidence which supported Mr. Loens' inability to perform one or more of the essential duties of a retail pharmacist.

27. On November 9, 2017, Sedgwick denied Mr. Loens recurrent disability claim. In the denial letter, Mr. Sturm wrote: "the medical documentation provided does not support functional impairments or restrictions and limitations that would preclude you from performing your own job duties as a Pharmacist."

**Mr. Loens appealed Sedgwick's denial of his LTD benefits**

28. On May 5, 2018, Mr. Loens underwent a functional capacity evaluation ("FCE"). The evaluators observed that Mr. Loens "has marked crepitus in both knees, left greater than right with audible clunking." The FCE determined that Mr. Loens' overall workday tolerance was 2-3 hours: 3-4 hours for sitting in 45-minute durations; 0-1 hours for standing in 5-10-minute durations; and 1-2 hours for walking, occasional short distances.

29. The FCE confirmed that Mr. Loens was unable to continually walk or stand working as a retail pharmacist.

30. The FCE confirmed that Mr. Loens was unable to perform one or more of the essential duties of his own occupation as a pharmacist with full-time pace and persistency.

31. On or about May 14, 2018, Mr. Loens' orthopedic surgeon, Richard Terek, M.D., wrote to Sedgwick that Mr. Loens' reports of pain, discomfort, and swelling in his left knee were consistent with the residual effects of his left knee surgery and diagnosis of osteoarthritis. Dr. Terek also reported that Mr. Loens would not be capable of continually standing and walking for 8-9 hours per day, 5 days per week, reliably and consistently.

32. Mr. Loens timely appealed Sedgwick's wrongful denial of benefits.

33. On or about July 16, 2018, Mr. Loens' file was reviewed by Howard Grattan, M.D., a physical medicine and rehabilitation specialist that Sedgwick hired using its vendor, Dane Street.

34. Dr. Grattan determined that Mr. Loens "does not have a functional impairment from 09/05/2017 ongoing or any portion of the review period that would affect his ability to perform the regular, unrestricted duties of his occupation."

35. On August 8, 2018, Mr. Loens' counsel wrote to Sedgwick and explained that Dr. Grattan used the incorrect date of disability, mischaracterized medical evidence, failed to meaningfully address Mr. Loens' FCE, and ignored the nature of Mr. Loens' disability.

36. On August 16, 2018, Dr. Grattan wrote an addendum to his July 16, 2018 report.

37. In his August 16, 2018 addendum, Dr. Grattan addressed the FCE, stating:

> when considering the demonstrated functional capacity activities demonstrated in the evaluation one must also consider the objective medical evidence presented by all providers and documentation throughout the case file. In this case, physical examinations described by the attending note the claimant to have well-healed left knee arthroscopy portals with pain to palpation to the medial compartment, no effusion, 0-120 range of motion, and crepitus, and x-rays revealed a slight amount of medial compartment narrowing with marginal osteophytes in the medial trochlea. These findings are not of a severity to support functional

>  impairment despite information obtained from the Functional capacity Evaluation.

38. On September 7, 2018, Mr. Loens' counsel wrote to Sedgwick and explained that Dr. Grattan ignored that Mr. Loens' exam findings would logically be less severe when he is not working and able to rest and elevate his knee as necessary; and that he ignored that the FCE tested Mr. Loens' ability to perform work-related activities that aggravate his knee condition, unlike a typical in-office exam.

39. On September 13, 2018, Dr. Grattan wrote another addendum to his July 16, 2018 report.

40. Dr. Grattan's September 13, 2018 addendum concluded that

> one can not assume that a return to work will result in further limited motion, cause effusion of the joint or other significant abnormality. While the claimant's pain complaints are appreciated, functional impairment must be supported by and based on quantifiable neuromuscular abnormalities on examination. Further the activities demonstrated on the Functional Capacity Evaluation should be consistent with the clinical findings on examination. Functional impairment can not be based solely on self-reported symptoms and a Functional Capacity Evaluation.

41. On October 4, 2018, Mr. Loens' counsel wrote to Sedgwick and explained that Dr. Grattan's September 13, 2018 opinion did not account for the fact that Mr. Loens attempted to return to work and experienced such symptoms; that it claimed that Mr. Loens' functional impairment was based solely on self-reported symptoms and the FCE, when his treating physician's exams showed reduced range of motion, crepitus, and pain with palpation; and that it continued to arbitrarily dismiss the FCE findings.

42. On October 11, 2018, Dr. Grattan wrote another addendum to his July 16, 2018 report.

43. Dr. Grattan's October 11, 2018 addendum concluded:

> While osteoarthritis may result in pain symptoms this would not prevent functional ability within appropriate medical restrictions

    and limitations . . . While [Mr. Loens] may report some tenderness and swelling after working there is no evidence of swelling on examination findings to support this . . . If there is clinical evidence provided reporting findings of further diminished motion, loss of quantified motor strength, joint instability, bony abnormality on recent diagnostic studies, gait abnormality and notable swelling on examination these findings may result in impairment and at that time this opinion could be reevaluated or considered . . . Until such findings are provided it would be reasonable to suggest that the claimant have the ability to elevate the lower extremity during times of self reported swelling.

44. On November 2, 2018, Mr. Loens' counsel wrote to Sedgwick and explained that Dr. Grattan ignored the physical therapist's September 5, 2017 exam which revealed positive swelling and discomfort following Mr. Loens' return to work; and that he stated that Mr. Loens should be able to function "within appropriate medical restrictions and limitations," while inexplicably maintaining his opinion that Mr. Loens is not functionally impaired and is able to work. Mr. Loens' counsel also explained that Dr. Grattan's suggestion that Mr. Loens should have the ability to elevate his leg during swelling would be impossible for him to do while working as a retail pharmacist.

45. On November 12, 2018, Dr. Grattan wrote another addendum to his July 16, 2018 report.

46. Dr. Grattan's November 12, 2018 addendum concluded:

    Legal correspondence from the claimant's attorney states the medical file does support evidence of swelling on examination, however the medical information cited included physical therapy progress notes. It should be noted these findings of swelling do not correlate with physical examinations by the attending physician which do not reveal swelling. Functional impairment cannot be based solely on physical therapy progress notes. Although the claimant has self-reported swelling and this was also noted by physical therapy, the treating provider does not describe any swelling on examination. While I noted that it would be reasonable to suggest that he could have the ability to elevate the legs during times of self-reported swelling there are no red flags on examination that would indicate he would be at increased risk of

8

       further injury by working in his normal job duties even with mild swelling.

47. On December 21, 2018, Mr. Loens' counsel wrote to Sedgwick and explained that Dr. Grattan arbitrarily concluded that functional impairment cannot be based solely on physical therapy notes, without any basis or explanation for that statement; and that he ignored the fact that it would be dangerous for Mr. Loens to work as a pharmacist while distracted by pain and swelling.  Mr. Loens' counsel also pointed out that Dr. Grattan walked back from his suggestion that Mr. Loens be allowed to elevate his leg during swelling after it was explained to him that Mr. Loens would be unable to do this while working as a retail pharmacist.

48. On January 3, 2019, Dr. Grattan wrote another addendum to his July 16, 2018 report.

49. Dr. Grattan's January 3, 2019 addendum concluded that, while the December 21, 2018 letter "refers to Dr. Terek's opinion that the claimant is unable to continually stand and walk for 8-9 hours per day is required by his occupation, however it should be noted the job description provided for my review did not indicate how long the claimant was required to stand and walk."

50. Dr. Grattan could not determine whether Mr. Loens had functional impairments that would affect his ability to perform the regular, unrestricted duties of his occupation without knowing what the physical duties of Mr. Loens' occupation were.

**Sedgwick denied Mr. Loens' appeal**

51. On January 4, 2019, Sedgwick denied Mr. Loens' appeal.

52. The denial letter from Sedgwick appeal specialist Amy Greenwald referenced Mr. Loens' "own occupation," but never actually mentioned what his own occupation was or what the essential duties of his own occupation were.

53. Sedgwick's decision to deny Mr. Loens' LTD benefits and deny his appeal was against the clear weight of the evidence.

54. Sedgwick's decision to deny Mr. Loens' LTD benefits and deny his appeal was wrong, arbitrary, and capricious.

55. Upon information and belief, the opinion of Dr. Jules David Hip-Flores was influenced by his own financial conflict of interest and his desire for repeat business from Sedgwick and/or Network Medical Review Co. Ltd.

56. Upon information and belief, the opinion of Dr. Howard Grattan was influenced by his own financial conflict of interest and his desire for repeat business from Sedgwick and/or Dane Street.

57. Based on the evidence submitted to Sedgwick or otherwise available to Sedgwick, establishing that Plaintiff has met the Plan conditions for entitlement to benefits continuously since May 3, 2017, and that he at all relevant times continued to meet said conditions, Plaintiff is entitled to payment of all Plan LTD benefits owed to him plus interest on all improperly withheld payments.

## COUNT I
### (Enforcement of Plaintiff's Rights Under the Plan – ERISA 29 U.S.C. §1132(a)(1)(B))

58. Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

59. Plaintiff is entitled to enforcement of all of his rights under the Plan, including but not limited to, payment of all past and present monthly disability insurance benefits.

60. Plaintiff is entitled to interest on all overdue payments.

## COUNT II
### (Breach of Fiduciary Duty Under the Plan – ERISA 29 U.S.C. §1104)

61. Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

62. To the detriment of Plaintiff, Sedgwick failed to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan.

63. To the detriment of Plaintiff, Sedgwick failed to discharge its duties with respect to the Plan solely in the interest of participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

## COUNT III
### (Clarification of Plaintiff's Rights to Future Benefits Under the Terms of the Plan – ERISA 29 U.S.C. §1132(a)(1)(B))

64. Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

65. Pursuant to 29 U.S.C. §1132(a)(1)(B), Plaintiff is entitled to clarification of his rights to future benefits under the terms of the Plan.

66. Plaintiff seeks a declaration that he has been continuously disabled under the terms of the Plan from May 3, 2017 to the present, and that he is entitled to any and all benefits wrongfully withheld for said period.

67. Plaintiff further seeks a declaration that he is entitled to interest on all benefits determined to have been wrongly withheld from him under the Plan.

## COUNT IV
### (Declaration of Plaintiff's Rights Under the Plan – 28 U.S.C. §2201)

68. Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

69. Based on the above asserted facts and allegations, this matter constitutes a case in controversy under the Declaratory Judgment Act, 28 U.S.C. §2201 and Plaintiff is entitled to a declaratory judgment establishing his rights under the Plan.

70. Plaintiff seeks a declaration that he has been continuously disabled under the terms of the Plan from May 3, 2017 through the present, and that he is entitled to any and all benefits wrongfully withheld under the Plan for said period.

71. Plaintiff further seeks a declaration that he is entitled to interest on all benefits determined to have been wrongfully withheld from him under the Plan.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendants and that the Court order Defendants to pay LTD income benefits to Plaintiff in the amount equal to the contractual amount of benefits to which Plaintiff is entitled.

B. That the Court order Defendants to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment.

C. That the Court order Defendants to continue paying Plaintiff benefits until such time as Plaintiff meets the policy conditions for discontinuance of benefits.

D. That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g).

E. That the Court enter declaratory judgment clarifying and establishing Plaintiff's rights under the Plan.

F. For such other legal or equitable relief as this Court deems just and proper, as well as the costs of suit.

The Plaintiff hereby designates J. Scott. Kilpatrick as Trial Counsel in this matter.

               Plaintiff, by his attorneys,

               <u>/s/ J. Scott Kilpatrick</u>
               J. Scott Kilpatrick, Esq. (#4036)
               jskilpatrick@cck-law.com
               Mason J. Waring, Esq. (#7737)
               mwaring@cck-law.com
               Leah Small, Esq. (#9701)
               lsmall@cck-law.com
               Chisholm Chisholm & Kilpatrick LTD
               One Turks Head Place - Suite 1100
               Providence, RI 02903
               (401) 331-6300 Telephone
               (401) 421-3185 Facsimile